**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
|     Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 4:06CR770RWS(MLM) |
| | ) | |
| ANDREW CHARLES KAIN, | ) | |
| | ) | |
|     Defendant. | ) | |

**REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

On February 12, 2007 this case came before the court for an Evidentiary Hearing on defendant's Pretrial Motions.[1] The government presented the testimony of Detective Darryl Balleydier and FBI Special Agent Patrick Cunningham. The defendant did not present evidence. Based on the testimony and evidence adduced and having had an opportunity to observe the demeanor and evaluate the credibility of the witnesses, the undersigned makes the following findings of fact and conclusions of law.

**FINDINGS OF FACT**

Detective Darryl Balleydier of the Washington Police Department assigned to the Franklin County Narcotics Enforcement Unit testified that on March 17, 2006 he applied for a Search Warrant for defendant's residence at 517 East 8th Street in Washington, Missouri.[2] The Application describes the residence to be searched with particularity as well as the objects of the search: "Marijuana, and/or drug paraphernalia, artifacts, and records pertaining to drug purchases and/or sales and manufacture, computers, computer discs and records." The Affidavit in Support of the Application sets out the facts which led Det. Balleydier to believe there was probable cause to search defendant's residence. The Affidavit describes Det. Balleydier's credentials in detail. The Affidavit

---

[1] Defendant filed a Motion to Suppress Evidence [Doc. 15] and a Motion to Suppress Statements [Doc. 16].

[2] The Application, Affidavit, photograph of the residence, Search Warrant, Return and Inventory and Criminal Scene Inventory were introduced as Gov.Ex.1.

states that at the beginning of January, 2006, Det. Balleydier received information from an officer of the Washington Police Department concerning drug activity at defendant's residence. The officer also told Det. Balleydier that he had received information from a confidential informant ("CI") that defendant was involved in the sale of marijuana.

On approximately January 20, 2006 Det. Balleydier received information from another officer in the Washington Police Department concerning defendant. The second officer was unaware of the information given to Det. Balleydier by the first officer. The second officer told him that he had received information from a CI about defendant being involved in the sale of marijuana. The CI informed him that defendant was currently unemployed and on disability but had been spending large sums of money. The CI also said that every few weeks defendant traveled to Kansas City, Missouri to purchase marijuana in three pound packages from an Hispanic male.

On 2/15/06 Det. Balleydier had the City of Washington Refuse Department collect trash from the curb in front of defendant's residence at 517 E. 8th Street and transport it to the Washington Police Department. Det. Balleydier found in the trash mail addressed to Andrew Kain at 517 E. 8th Street and two plastic sandwich bags that contained green plant material and residue that he recognized as marijuana.

On 2/22/06 he again had the Refuse Department collect trash from the curb in front of defendant's residence and had it transported to the Washington Police Department. During the search of this trash, he found mail and other paperwork bearing the name of Andrew Kain and the address of 517 E. 8th Street. Other paperwork in the trash appeared to suggest that defendant was selling photographs of nude and partially nude women on the Internet. Another document was an order invoice where it appeared that defendant ordered an aluminum marijuana grinder. Det. Balleydier also found three plastic sandwich bags containing green plant material residue which he recognized as marijuana. He also found digital photographs of what appeared to be an indoor marijuana growing operation.

On 3/1/06 he again had the Refuse Department collect the trash from the curb in front of defendant's residence and bring it to the Washington Police Department. This search of the trash found mail bearing defendant's name and the address of 517 E. 8th Street as well as a plastic sandwich bag containing a plant seed and plant material which he recognized as marijuana.

During the week of 3/8/06 Det. Balleydier met with the third CI. This CI told him that defendant was involved in the sale of marijuana. He/she said that approximately two weeks earlier he/she had seen what he/she believed to be two pounds of marijuana on defendant's kitchen table. He/she said that defendant had been packaging the marijuana into small plastic bags and that defendant was wearing rubber gloves. Defendant told the CI that he always wears rubber gloves when he is packaging his marijuana in order that he not leave fingerprints on the bags. The CI also said that he/she has seen defendant remove a gallon size zip lock bag full of U.S. currency from a kitchen cabinet drawer. The CI said that he/she witnessed this approximately one week prior to the meeting between the CI and Det. Balleydier. The CI said that around the same time, he/she had seen photographs on defendant's computer that were of an indoor marijuana growing operation. Defendant told the CI that the photographs were of a marijuana growing operation in Kansas City, Missouri and that is where he was getting his marijuana.

Once again on 3/15/06 Det. Balleydier had the Refuse Department collect the trash from in front of defendant's residence and bring it to the Washington Police Department. Upon searching the trash he found mail bearing defendant's name and address. He also found three plastic sandwich bags that contained plant material residue that he recognized as marijuana. Two of the plastic bags were missing a corner.[3]

---

[3] Defendant's counsel cross-examined extensively on how Det. Balleydier knew that the trash brought to the Washington Police Department was actually defendant's trash. Det. Balleydier said he was not simply dependant on the trash man's word because the contents of the bags, the mail and the paperwork contained defendant's name and address.

On 3/16/06 Det. Balleydier again spoke to the third CI. He/she told him that defendant had recently purchased a used Jeep Cherokee and that defendant had been bragging that he paid cash for the vehicle.

Det. Balleydier checked defendant's criminal history and found that he had one arrest in the State of Kansas for a crime against a child and that he is a registered sex offender.[4]

The Affidavit then sets out Det. Balleydier's knowledge of the means and methods used by drug dealers in their drug dealing activities and record keeping. This information was based on his training and expertise. The Affidavit describes the residence to be searched with particularity.

Based on the facts set out in the Affidavit, Judge David Hoven of the Circuit Court of Franklin County found probable cause and signed the Search Warrant on 3/17/06.

On 3/22/06 Det. Balleydier executed the Search Warrant. He, Sgt. Grellner and two uniformed officers responded to defendant's front door. They knocked and announced "Search Warrant"; receiving no answer, they knocked and announced again. They were able to observe a white male moving about inside the residence. They knocked again and heard a male believed to be defendant call out to an unknown male down the hall. Fearing that evidence would be destroyed and concerned for officer safety, they struck the door with a ram. Defendant then opened the door. Defendant was placed on the floor and handcuffed. Det. Balleydier gave defendant a copy of the Search Warrant and defendant blurted out "You guys picked the wrong day. There's nothing in the house."

Sgt. Grellner then told defendant that if he was going to make statements he had better be advised of his <u>Miranda</u> Rights. He read the rights off his Department-issued card and told defendant in effect that he had the right to remain silent; that anything he said could and would be

---

[4] Det. Balleydier testified that defendant's name was on the State Sex Offender List. Defendant introduced as Def.Ex.B documents from the Franklin County Sheriffs Department which purport to show a complaint issued against defendant in Johnson County, Kansas, a Missouri Offender Registration Notification and other documents including Offender Registration reports which do not mention the word "sex" offender. Det. Balleydier stated that he had never seen that particular report before but had seen print outs from the Mules system.

used against him in court; that he had the right to an attorney and to have an attorney present for any questioning; and that if he could not afford an attorney one would be appointed for him before any questioning. Sgt. Grellner asked defendant if he wished to waive his rights and defendant responded "Yes". No threats, coercion, intimidation, promises or misrepresentations were made to induce defendant to waive his rights and speak to Sgt. Grellner. He did not appear to be intoxicated or high. He understood English. Defendant then spoke to Sgt. Grellner.

Det. Balleydier asked for consent to search defendant's vehicles: a green Miata in the garage and a Jeep outside. Defendant consented to a search of the vehicles and volunteered his consent to search a blue truck on the road. In the Jeep the searching officers found marijuana packaged for sale. A laptop computer was seized from the residence pursuant to the Search Warrant. Det. Balleydier directed that an Inventory be prepared, left a copy with defendant and filed a return with the court. See Gov.Ex.1.

Following the execution of the Search Warrant, Det. Balleydier received another call from the CI. He/she told Det. Balleydier that defendant was very concerned that the officers would search the laptop. An analyst in the Franklin County Narcotics Enforcement Unit reported that defendant requested access to the computer "just for five minutes" to collect some college papers. Access was denied.

On 4/6/06 Det. Balleydier applied for another Search Warrant, this time for the laptop computer.[5] The Application describes with particularity the objects of the search including generally, evidence of drugs, drug related criminal activity and/or pornography. The Affidavit in Support of the Search Warrant describes the investigation of defendant including the Search Warrant executed on 3/22/06, the fact that items of a pornographic nature were seized, including computer discs containing photographic images and paper records concerning defendant's selling pornographic discs on eBay. Also included in the Affidavit is the information that previously two

---

[5] The Application, Affidavit, Search Warrant, Return and Inventory were introduced as Gov.Ex.2.

CI's had informed Det. Balleydier that defendant was selling pornography on the Internet. A check of defendant's criminal history showed he was on the Franklin County Sexual Offender registry for Abuse of a Child. Based on the facts contained in the Affidavit, Judge Stanley D. Williams of the Circuit Court of Franklin County found probable cause and signed the Search Warrant for the laptop computer on 4/6/06. A search of the computer revealed numerous graphic images and video files of child pornography.

Another Search Warrant was executed with regard to the forty-six compact discs and a digital camera seized during the 3/22/06 execution of the Search Warrant at defendant's residence. No evidence was adduced regarding this search because nothing of evidentiary value was revealed.

Special Agent Patrick Cunningham testified that he has been an FBI agent for eleven years with three years prior law enforcement experience in the St. Louis County Police Department. He stated he was contacted by the Franklin County Sheriffs Department about child pornography on defendant's computer. On December 20, 2006, defendant was indicted on the instant charge of one count of Possession of Child Pornography. On December 21, 2006, in Washington County, SA Cunningham arrested defendant on the Warrant issued pursuant to the indictment. SA Cunningham said he wanted to talk to defendant and defendant agreed to speak with him. They went to the Washington County Police Department. SA Cunningham advised defendant of his <u>Miranda</u> Rights by presenting the rights to him on an Advice of Rights form. Defendant read each of the rights out loud and initialed each right to indicate he understood. The form states:

> Before we ask you any questions, you must understand your rights.
>
> You have the right to remain silent. Anything you say can be used against you in court.
>
> You have the right to talk to a lawyer for advice before we ask you any questions.
>
> You have the right to have a lawyer with you during questioning. If you cannot afford a lawyer, one will be appointed for you before any questioning if you wish. If you decide to answer questions now without a lawyer present, you have the right to stop answering at any time.

The form then states: "I have read this statement of my rights and I understand what my rights are. At this time I am willing to answer questions without a lawyer present." Defendant signed the waiver portion indicating he was willing to speak without a lawyer present. It was witnessed by SA Cunningham and Detective Dave Scott. See Gov.Ex.3.

No threats, coercion, intimidation, promises or misrepresentations were made to induce defendant to waive his rights and speak to SA Cunningham. He did not appear intoxicated or high. He spoke English. He admitted that a week prior to "D-day" (meaning "door day" or the day his door was kicked in) he had accessed child pornography and downloaded it onto his computer.

## CONCLUSIONS OF LAW

**1. Search Warrants**

At issue are the Search Warrants for defendant's residence and his laptop computer. Defendant alleges they lacked probable cause.

Search warrants to be valid must be based on a finding by a neutral detached judicial officer that there is probable cause to believe that evidence, instrumentalities or fruits of a crime, contraband or a person for whose arrest there is probable cause may be found in the place to be searched. Johnson v. United States, 333 U.S. 10 (1948); Warden v. Hayden, 387 U.S. 294 (1967); Fed.R.Crim.P. 41. The standard of probable cause for the issuing judge is whether, given the totality of the circumstances, "there is a fair probability that contraband or evidence of a crime will be found in a particular place." Illinois v. Gates, 462 U.S. 213, 238 (1983). Probable cause is "a fluid concept--turning on the assessment of probabilities in particular factual contexts--not readily, or even usefully, reduced to a neat set of legal rules." Gates, 462 U.S. at 232. Applications and affidavits should be read with common sense and not in a grudging, hypertechnical fashion. United States v. Ventresca, 380 U.S. 102, 109 (1965). Information contained in applications and affidavits for search warrants must be examined in the totality of the circumstances presented. Gates, 462 U.S. at 230. The duty of the reviewing judge "is simply to ensure that the [issuing judge] had a

`substantial basis for . . . conclud[ing]' that probable cause existed." Gates, 462 U.S. at 238-39, quoting Jones v. United States, 362 U.S. 257, 271 (1960). Once a judicial officer has issued a warrant upon a finding of probable cause, that finding deserves great deference. Gates, 462 U.S. at 236. The affidavits presented in the instant case clearly contain the "fair probability" that evidence, instrumentalities or fruits of a crime or contraband would be found at defendant's residence and on his laptop. The facts set out above show that there was a substantial basis for concluding that probable cause existed.

The state court judges relied on Det. Balleydier's Affidavits in determining whether there was probable cause. See United States v. Solomon, 432 F.3d 824, 827 (8th Cir. 2005) (when issuing judge relies solely on supporting affidavit to issue warrant "only that information which is found within the four corners of the affidavit may be considered in determining the existence of probable cause"), quoting United States v. Etheridge, 165 F.3d 655, 656 (8th Cir. 1999), quoting United States v. Gladney, 48 F.3d 309, 312 (8th Cir. 1995); United States v. Wells, 347 F.3d 280, 286 (8th Cir. 2004) (when issuing court relies solely on an affidavit to determine whether probable cause exists, only the information found within the four corners of the affidavit may be considered by reviewing court).

A search warrant must describe with particularity the place to be searched and the things to be seized. U.S. Const. Amend. IV; Rule 41, Federal Rules of Criminal Procedure. Police officers executing a search warrant may search for and seize items described in the search warrant. They may also seize other items of evidence, contraband or instrumentalities of a crime if discovered during the reasonable course of the search. Warden v. Hayden, 387 U.S. 294, 298-301 (1967); United States v. Peterson, 867 F.2d 1110, 1112-14 (8th Cir. 1989). The discovery of such other items need not be "inadvertent." See Horton v. California, 496 U.S. 128, 110 S.Ct. 2301, 2308-11 (1990).

As to the search of defendant's residence, within the four corners of the Affidavit is information that shows that Det. Balleydier had information from three different CI's about defendant's narcotics activities and he retrieved incriminating information from four trash searches

of trash taken from outside defendant's residence. There is no question that there was a substantial basis for the state judge to conclude that probable cause existed for the search of defendant's residence for drug related activity.

As to the search of defendant's laptop computer, within the four corners of the Affidavit is information that shows that Det. Balleydier executed the Search Warrant for defendant's residence on 3/22/06 and seized several ounces of marijuana packaged for sale, that items of a pornographic nature were seized as well as paper records concerning defendant selling pornographic discs on eBay, that he had information from two CI's about defendant's selling pornography on the Internet and that defendant had a conviction for Abuse of a Child. The Affidavit summarizes at length Det. Balleydier's knowledge and experience about drug dealers maintaining records, etc. There is no question that there was a substantial basis for the state judge to conclude that probable cause existed for the search of defendant's laptop.

2.    **Consent Search**

Defendant consented to a search of his Miata and Jeep and volunteered consent to search his blue truck. Marijuana packaged for sale was seized from the Jeep.

A search based on the consent of an individual may be undertaken by government actors without a warrant or probable cause and any evidence discovered during the search may be seized and admitted at trial. Schneckloth v. Bustamonte, 412 U.S. 218, 222 (1973). Consent must be freely and voluntarily given. Id. In determining whether consent is freely and voluntarily given, the court must examine the totality of the circumstances. United States v. Mendenhall, 446 U.S. 544, 547 (1980); United States v. Chaidez, 906 F.2d 377, 381 (8th Cir. 1990); United States v. Lee, 886 F.2d 998, 1000 (8th Cir. 1989), cert. denied, 495 U.S. 906 (1990).

A consent is voluntary if it is "the product of an essentially free and unconstrained choice by its maker," Schneckloth v. Bustamonte, 412 U.S. 218, 225 (1973), rather than "the product of duress or coercion, express or implied." Id. at 227. The defendant's awareness of the right to refuse is not necessary for a consent to be voluntary. Id. at 234-35; United States v. Heath, 58 F.3d 1271,

1275-76 (8th Cir.) (prosecution need not prove defendant was fully aware of rights under Fourth Amendment in order to establish voluntariness of consent), cert. denied, 516 U.S. 892, 116 S.Ct. 240 (1995); United States v. Barahona, 990 F.2d 412, 417 (8th Cir. 1993); United States v. Boyer, 988 F.2d 56, 57 (8th Cir. 1993) (defendant's lack of knowledge that he could withhold consent does not invalidate search); United States v. Chaidez, 906 F.2d 377, 380 (8th Cir. 1990). Further, the voluntariness of a consent is a question of fact to be determined from the totality of the circumstances. Bustamonte, 412 U.S. at 277.

"In assessing voluntariness courts look both to the characteristics of the accused and the details of the environment." United States v. Miller, 20 F.3d 926, 930 (8th Cir.), cert. denied, 513 U.S. 886, 115 S.Ct. 226 (1994). The following are relevant to this determination:

> The age of the defendant; his general intelligence and education; whether he was under the influence of a mind-altering substance; whether he was informed of his right to withhold consent or of his Miranda rights; the length of time he was detained and questioned; whether he was threatened, physically intimidated, or punished by the police; whether he relied upon promises or misrepresentations made by the police; whether he was in a public or secluded location; and whether he objected to the search or passively looked on. Chaidez, 906 F.2d at 381 (citations omitted).

United States v. Barahona, 990 F.2d at 417; United States v. Armstrong, 16 F.3d 289, 295 (8th Cir. 1994). The factors are not to be mechanically applied but rather are "valuable as a guide to analysis." Chaidez, 906 F.2d at 381.

In the present case, defendant, who is of normal intelligence and who did not appear to be under the influence of drugs or alcohol, was detained briefly while his residence was searched, no threats or intimidation- type tactics were used and no promises or misrepresentations were made. Although defendant was in custody, he was in his own home and he even volunteered his consent to search a third vehicle.

There is no requirement that a consent to search be given in writing: ". . . A search may be justified by a voluntary oral consent in the absence of a valid written consent." United States v. Chaidez, 906 F.2d 377, 382 (8th Cir. 1990).

The Eighth Circuit has clearly held that Miranda warnings are not necessary before a consent to search is requested and given. United States v. Washington, 957 F.2d 559, 563 (8th Cir.), cert. denied, 506 U.S. 883, (1992). Because requesting consent to search is not likely to elicit an incriminating statement, such questioning is not "interrogation" and thus Miranda warnings are not required. United States v. Glenna, 878 F.2d 967 (7th Cir. 1989); Cody v. Solem, 755 F.2d 1323 (8th Cir.), cert. denied, 474 U.S. 833 (1985). Although not required, defendant was fully advised of his Miranda Rights prior to giving his consent. The search of defendant's vehicles was voluntary and the marijuana packaged for sale should not suppressed.

**3.    Statements**

   **A.    Spontaneous Statement**

When the officers informed defendant of the Search Warrant he blurted out: "You guys picked the wrong day. There's nothing in the house." Miranda warnings must be given when the defendant is both in custody and subject to interrogation. Miranda v. Arizona, 384 U.S. 436 (1966).

In the present case, defendant was arguably in custody at the time of his spontaneous statement, however, in addition to the requirement of custody, the defendant must also be interrogated for Miranda to apply. Miranda v. Arizona, 384 U.S. 436, 444 (1966). Interrogation is "express questioning or its functional equivalent." Rhode Island v. Innis, 446 U.S. 291, 300-01 (1980). A spontaneous statement by a person in custody does not warrant suppression. United States v. McCoy, 200 F.3d 582, 584 (8th Cir. 2000) (Miranda not applicable because defendant's statement was spontaneous and not in response to questioning by officer).

In fact, "the Supreme court in Miranda expressly stated that '[v]olunteered statements of any kind are not barred by the Fifth Amendment and their admission is not affected by our holding today.'" United States v. Butzin, 886 F.2d 1016, 1018 (8th Cir. 1989) quoting Miranda v. Arizona, 384 U.S. 436, 478 (1966). Defendant's spontaneous statement should not be suppressed.

### B. Statements Requesting Access to His Computer

After the execution of the Search Warrant and the seizure of his laptop, defendant requested access to it, allegedly to obtain some materials he needed for college. The above analysis applies. Defendant was not in custody nor was he interrogated. He initiated the contact with the analyst at the Franklin County Narcotics Enforcement Unit over the phone. His statements to the analyst should not be suppressed.

### C. Statements to SA Cunningham

After defendant's arrest on the Warrant pursuant to the instant Indictment, SA Cunningham fully advised defendant of his Miranda Rights. Defendant initialed each right indicating he understood and signed the form waiving his rights. Gov.Ex.3. A defendant may knowingly and intelligently waive his rights and agree to answer questions. Miranda v. Arizona, 384 U.S. 436, 479 (1966). When the prosecution seeks to introduce in evidence a statement made by a defendant while in custody, it has the burden of showing by a preponderance of the evidence that the statement was made after a voluntary, knowing and intelligent waiver of the Miranda rights by the defendant. Colorado v. Connelly, 479 U.S. 157 (1986). "The requirement that Miranda warnings be given does not, of course, dispense with the voluntariness inquiry" Dickerson v. United States, 530 U.S. 428, 444 (2000). The court must look to the totality of the circumstances surrounding the interrogation to determine whether the waiver was the product of a free and deliberate choice, rather than intimidation, coercion, or deception; and whether the waiver was made with an awareness of the right being abandoned and the consequences of the decision to abandon it. Moran v. Burbine, 475 U.S. 412 (1986).

The statement must be voluntary and not the product of any police conduct by which the defendant's will is overborne. Haynes v. Washington, 373 U.S. 503 (1963); Colorado v. Connelly, 479 U.S. at 170. However, as the Supreme Court stated in Berkemer v. McCarthy, 468 U.S. 420 (1984), "[c]ases in which a defendant can make a colorable argument that a self-incriminating

statement was 'compelled' despite the fact that law enforcement authorities adhered to the dictates of Miranda are rare." Id. at 433 n. 20; Dickerson, 530 U.S. at 444.

Having been fully and properly advised of his Miranda Rights and waiving them, it is clear that this is not one of the rare cases described in Berkemer. See United States v. Turner, 157 F.3d 552, 555 (8th Cir. 1998)(finding knowing and intelligent waiver where defendant "reviewed and initialed each admonition on the waiver form, agreed to answer questions and gave accurate information.") Defendant's statements to SA Cunningham should not be suppressed.

**Accordingly,**

**IT IS HEREBY RECOMMENDED** that Defendant's Motion to Suppress Evidence be **DENIED. [Doc. 15]**

**IT IS FURTHER RECOMMENDED** that Defendant's Motion to Suppress Statements be **DENIED. [Doc. 16]**

**IT IS HEREBY ORDERED** that trial is this case has been set on **April 2, 2007** at **9:00 A.M.** before the Honorable Rodney W. Sippel.

The parties are advised that they have eleven (11) days in which to file written objections to this report and recommendation pursuant to 28 U.S.C. §636(b)(1), unless an extension of time for good cause is obtained, and that failure to file timely objections may result in a waiver of the right to appeal questions of fact. See Thompson v. Nix, 897 F.2d 356 (8th Cir. 1990).

/s/Mary Ann L. Medler
**MARY ANN L. MEDLER**
**UNITED STATES MAGISTRATE JUDGE**

**Dated this   23rd   day of February, 2007.**