UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 4:06CR770RWS(MLM) |
| | ) | |
| ANDREW CHARLES KAIN, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**SUPPLEMENTAL REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

On August 15, 2007 this matter came before the court for a supplemental Evidentiary Hearing.[1] Following the Hearing the parties were granted until August 27, 2007 to brief the issues raised.

For purposes of this R&R the court incorporates by reference, as if fully set out herein, the findings of fact and conclusions of law contained in its previously filed R&R. [Doc. 22]

On March 22, 2006 police officers executed a Search Warrant ("SW #1") at defendant's home as part of an investigation of marijuana dealing by defendant. A laptop computer was seized as well as computer disks labeled so as to indicate they were of a pornographic nature as well as paper records concerning defendant's selling pornographic disks on eBay. A second Search Warrant ("SW #2") for the laptop computer revealed graphic images and video files of child pornography which form the basis of the charges defendant faces in the instant Indictment.

---

[1] On 2/12/07 an Evidentiary Hearing was held on defendant's pretrial motions, specifically a Motion to Suppress Evidence [Doc. 15] and a Motion to Suppress Statements [Doc. 16]. On 2/23/07 this court issued a Report and Recommendation ("R&R") [Doc. 22]. Defendant objected to the R&R [Doc. 32]. The government responded to the objections [Doc. 34].

On 5/18/07 defendant moved to reopen the evidence on his Motions to Suppress on grounds of newly-discovered evidence [Doc. 37]. Although the "newly-discovered" allegation was questionable, the court, nevertheless, set a supplemental hearing in the interest of justice. Numerous continuances were granted, primarily on the grounds that defendant needed more time for his computer forensic examiner to examine defendant's laptop computer.

**Defendant challenges the second Search Warrant on the grounds that during the execution of SW #1 officers accessed defendant's laptop computer without a Search Warrant, without consent and without exigent circumstances. Defendant alleges that it was only <u>after</u> the police illegally searched the laptop that they applied for SW #2.[2]**

**At the supplemental Evidentiary Hearing defendant presented the testimony of four witnesses.**

**<u>Officer Nathan Pinter</u> of the Washington, Missouri Police Department testified he was present at the execution of the Search Warrant for defendant's home (SW #1). He was in uniform, outside, when the search team entered in order to show police presence so that neighbors would be reassured that a burglary was not in progress and to assure that neither defendant nor any of his companions exited the residence. He said entry began on 3/22/06 at approximately 7:48 A.M. He said he did not see a laptop computer nor did he see any of the law enforcement officers with a laptop computer.**

**<u>Detective Darryl Balleydier</u>[3] of the Washington, Missouri Police Department testified that he was the affiant on SW #1 and that he participated in the search of defendant's residence. He said that the entry team consisted of approximately six people, that defendant did not immediately open the door after the "knock and announce," that he had the "breaking tool," that after he heard two male voices he was concerned for officer safety and struck the door and that then defendant unlocked and opened the door. Det. Balleydier went past defendant to Michael Robinson and handcuffed him. Another Officer handcuffed defendant and the two men were directed to sit on the couch in the living room. Det. Balleydier told defendant of the Search Warrant and defendant**

---

[2] **Defendant's allegations about law enforcement's accessing his cell phone and digital camera were dealt with in the court's prior R&R. In addition, the government has stated that it does not intend to offer at trial evidence obtained from the cell phone or camera. Further, the court notes for the record that defendant's allegations in his post-hearing brief that the Affidavit in Support of SW #1 contained "an uncorroborated tip from an unnamed, unreliable source" is not supported by the Affidavit itself introduced as part of Gov.Ex.1.**

[3] **Detective Balleydier testified at the previous Evidentiary Hearing.**

spontaneously blurted "You guys picked the wrong day. There's nothing in the house." Det. Balleydier let defendant read the Search Warrant. The officers were in the house approximately one and one-half to two hours. Det. Balleydier said Officer Briggs found defendant's computer and that he (Det. Balleydier) observed defendant's computer in a bedroom converted to an office. He said it was either off or he turned it off before he seized it. He did not see any images on it nor did he see anyone type on the keyboard or use the mouse. Det. Balleydier said DEA Agent Arnold Baratti was present but that he did not recall if Agent Baratti was in the computer room.

**Detective Sargent Jason Grellner**[4] of the Franklin County Sheriff's Department testified he participated in the execution of the Search Warrant at defendant's residence. Det. Sgt. Grellner said that as soon as defendant made the comment about the officers coming on the wrong day, he advised him of his Miranda rights by reading from his department-issued card. He said Agent Baratti was not on the entry team but came into the house after it was secured. Det. Sgt. Grellner said he looked at defendant's cell phone because defendant told them there was a number on it for his drug dealer. Defendant at no time objected to the search of the cell phone. Det. Sgt. Grellner said he went through defendant's digital camera on which was a video clip of defendant and Michael Robinson discussing marijuana at defendant's house. Defendant did not object to the search of the camera.

In response to defendant's subpoena, Det. Sgt. Grellener brought to court the forty-six CD's that were seized. He testified at great length about the appearance and labeling of each. Although the government is not seeking to admit the disks as evidence at trial, Det. Sgt. Grellner testified about his twelve years of experience with drug investigations and he said he has worked on approximately one thousand cases and is familiar with drug traffickers and methods they use. Frequently they maintain computer disks of their drug records. They do not label them "marijuana

---

[4] Detective Sargent Grellner testified that his title is "Detective Sargent." The government refers to him as Corporal. The court is therefore unsure of his correct title, but will refer to him as he identified himself.

sales" or any other such obvious title, rather they mis-label them with all sorts of names or do not label them at all. He was aware that the Search Warrant for the residence included and allowed for seizure of drug trafficking records.

Det. Sgt. Grellner said Agent Baratti was not near the laptop. He testified he was near it and he did not see anyone open it, open files, type on the keyboard or touch the mouse. He said he told Agent Baratti to secure it and they would get a search warrant for it later.

**Leonard Stimmel**, MM, CCE is a Senior Forensic Examiner for United Forensics. His curriculum vitae was introduced as Defendant's Exhibit A. He testified about his qualifications; his credentials as an expert witness in the field of computer forensics were not challenged. He testified he was asked by defendant's counsel to examine defendant's laptop computer to determine whether it had been accessed on the morning of 3/22/06 during the time of the execution of SW #1 at defendant's residence. He prepared a report of approximately one thousand pages. He testified that the last log-on occurred on 3/21/06. There was no log-off indicating the computer was "on" when the Search Warrant was executed. During one 10 minute period several hundred files were accessed, indicating that the access was not consistent with a manual user. Most likely these accesses were from a system access such a virus scan. However, he testified it was his opinion that there were two image files briefly accessed by a person during the time at issue.[5] One was called "Plants;" the other one was called "Big Grow." The parties stipulated that these images are photos of marijuana plants and a marijuana growing operation.

### CONCLUSIONS OF LAW

---

[5] Numerous files show an access time at the same second - - indicative of machine access. Mr. Stimmell testified a ten second split is indicative of person-access. Defendant's Exhibit C is part of his report.

As more fully set out in this court's prior R&R, Gov.Ex.1 is the Application, Affidavit, photo, Search Warrant and Return and Inventory for defendant's residence at 517 East 8th Street.[6] The warrant was sought in connection with **drug** investigation. In the Application for the Search Warrant Det. Balleydier stated the contraband or evidence of crime for which the Search Warrant was sought was:

> Marijuana, and/or drug paraphernalia, artifacts, and **records** pertaining to drug purchases and/or sales and manufacture, **computers, computer disks and records.**

Gov.Ex.1 (emphasis added)

In the Affidavit in Support of the Search Warrant, Det. Balleydier included the following based on his training and experience:

> a) Drug dealers maintain books, records, receipts, notes, ledgers, and other papers relating to the transportation, ordering, sale and distribution of controlled substances, even though documents may be in code. Drug traffickers commonly "front" drugs (provided controlled substances on consignment) to their clients. These books, records, receipts, notes, ledgers, etc., are commonly maintained where the drug traffickers have ready access to them, i.e., homes, offices and automobiles. . . .

---

[6] In the court's prior R&R the law concerning search warrants was set out in full: Search warrants to be valid must be based on a finding by a neutral detached judicial officer that there is probable cause to believe that evidence, instrumentalities or fruits of a crime, contraband or a person for whose arrest there is probable cause may be found in the place to be searched. Johnson v. United States, 333 U.S. 10 (1948); Warden v. Hayden, 387 U.S. 294 (1967); Fed.R.Crim.P. 41. The standard of probable cause for the issuing judge is whether, given the totality of the circumstances, "there is a fair probability that contraband or evidence of a crime will be found in a particular place." Illinois v. Gates, 462 U.S. 213, 238 (1983). Probable cause is "a fluid concept--turning on the assessment of probabilities in particular factual contexts--not readily, or even usefully, reduced to a neat set of legal rules." Gates, 462 U.S. at 232. Applications and affidavits should be read with common sense and not in a grudging, hypertechnical fashion. United States v. Ventresca, 380 U.S. 102, 109 (1965). Information contained in applications and affidavits for search warrants must be examined in the totality of the circumstances presented. Gates, 462 U.S. at 230. The duty of the reviewing judge "is simply to ensure that the [issuing judge] had a `substantial basis for . . . conclud[ing]' that probable cause existed." Gates, 462 U.S. at 238-39, quoting Jones v. United States, 362 U.S. 257, 271 (1960). Once a judicial officer has issued a warrant upon a finding of probable cause, that finding deserves great deference. Gates, 462 U.S. at 236. The affidavit presented in the instant case clearly contains the "fair probability" that evidence, instrumentalities or fruits of a crime or contraband would be found at the address indicated. The facts set out above show that there was a substantial basis for concluding that probable cause existed.

> d) Drug traffickers commonly maintain addresses or telephone numbers in books or papers which reflect names, addresses and/or telephone numbers for their associates in the drug trafficking organization, even if the same may be in code. Such records are commonly kept in written form, or in **data files stored in personal computers**.

Gov.Ex.1 (emphasis added)

The Search Warrant itself stated there was probable cause to believe that the following could be found at defendant's residence and authorized their search and seizure:

> Marijuana and/or drug paraphernalia, artifacts, and records pertaining to drug purchases and/or sales and manufacture, **computers, computer disks and records**.

Gov.Ex.1 (emphasis added)

This court's previous R&R which is incorporated by reference, set out the law applying to search warrants, see Footnote 6, and stated that based thereon "there is no question that there was a substantial basis for the state judge to conclude that probable cause existed for the search of defendant's residence for drug related activity."[7]

The face of the Search Warrant therefore authorized law enforcement officers to search the computer and any computer disks located in the residence. Defendant's argument that the government's "warrantless" accessing the computer is without merit. Although there was no evidence presented at either hearing that any witness had observed or had personal knowledge that

---

[7] The probable cause came from three separate Confidential Informants ("CI"). One said defendant was involved in the sale of marijuana. Another said defendant was involved in the sale of marijuana, was currently unemployed, on disability but spending large sums of money, and every few weeks traveled to Kansas City, Missouri to purchase marijuana in three pound packages from an Hispanic male. The third CI said defendant was involved in the sale of marijuana and that approximately two weeks earlier he/she had seen approximately two pounds of marijuana on defendant's kitchen table. He/she said defendant was packaging the marijuana into small plastic bags and wearing rubber gloves so as not to leave fingerprints on the bags. He/she said he saw defendant remove a gallon size zip lock bag from the kitchen cabinet drawer filled with United States currency. He/she said he saw photos on defendant's computer of a marijuana growing operation in Kansas City. On numerous occasions Det. Balleydier had the Refuse Department collect trash from in front of defendant's residence. The trash contained evidence of mail bearing defendant's name and address, plastic bags with marijuana residue, seed and plant material, invoices for an aluminum marijuana grinder, digital photos of a marijuana growing operation and other paperwork indicating defendant was selling photos of nude and partially nude women on the Internet.

any person viewed the computer files during the execution of the Search Warrant, nevertheless, even if the computer files of "Plants" and "Big Grow" were briefly accessed, the access was authorized by the Search Warrant which allowed officers to search "computers, computer disks and records."

Out of an abundance of caution, Det. Balleydier applied for and obtained a Search Warrant for defendant's HP Pavillion laptop computer. Gov.Ex.2. As found in this court's prior R&R, within the four corners of the Affidavit was independent probable cause for the search of the computer. The Affidavit in Support describes, *inter alia*, the execution of the Search Warrant at defendant's home on 3/22/06 and the seizure of several ounces of marijuana packages for sale, items of a pornographic nature, as well as paper records concerning defendant selling pornographic disks on eBay, information from two CI's about defendant selling pornography on the Internet and that defendant had a conviction for abuse of a child. The purpose of the search was primarily for drug records based on Det. Balleydier's training experience as set out in paragraph 8(a), (b) and (c) of the Affidavit. In support of probable cause there is no mention of the viewing of images on defendant's laptop or information from his cell phone or digital camera. Det. Balleydier testified he provided no additional information to the judge other than that contained in the Affidavit. The search of the computer was therefore authorized by both Search Warrants. The discovery of the child pornography (with which defendant is charged in the instant Indictment) was merely incident to the search for drug records or, at the very least, incident to the search for records concerning defendant's selling pornographic disks on eBay in violation of pornography laws.[8]

---

[8] It is analogous to a plain view search. When police officers are lawfully in a particular location and observe items in plain view which they have probable cause to believe are contraband or evidence of a crime, they may seize such items without a warrant. Coolidge v. New Hampshire, 403 U.S. 443, 464-73 (1971); Arizona v. Hicks, 480 U.S. 321, 326 (1987); United States v. Garner, 907 F.2d 60, 62 (8th Cir. 1990), cert. denied, 498 U.S. 1068 (1991). There is no requirement that the discovery be inadvertent. Horton v. California, 496 U.S. 128, 136-143, 110 S.Ct. 2301, 2308-11 (1990). Here the officers were lawfully searching the laptop for drug records and came upon the child pornography images.

The government argues, in the alternative, that even if the court should conclude that law enforcement officers' viewing the "Plant" and "Big Grow" images on the computer prior to obtaining SW #2 was improper, suppression of the child pornography images found on the computer is not warranted. The government cites Murray v. United States, 108 S.Ct. 2529, 2533 (1988) quoting Nix v. Williams, 467 U.S. 431, 443 (1984) for the proposition that:

> [T]he interest of society in deterring unlawful police conduct and the public interest in having juries receive all probative evidence of a crime are properly balanced by putting the police in the same, not *worse*, position than they would have been in if no police error or misconduct had occurred. ...When the challenged evidence has an independent source, exclusion of such evidence would put the police in a worse position than they would have been absent any error or violation.

Nix v. Williams, 467 U.S. 431, 433 (1984). This court agrees that "so long as a later, lawful seizure is genuinely independent of an earlier, tainted one, ... there is no reason why the independent source doctrine should not apply." Murray, 108 S.Ct at 542.

In the instant case, nothing from the purported brief viewing of the images was included in the Affidavit supporting the Search Warrant for the laptop computer. The two files, validly viewed pursuant to SW #1 were not seen or described by Det. Balleydier, the affiant for SW #2 for the laptop. See Segura v. United States, 468 U.S. 796, 814 (1984) (holding that evidence was not subject to suppression where police illegally entered an apartment but later obtained a search warrant which contained probable cause wholly unrelated to the illegal entry).

Because the valid second Search Warrant, supported by independent probable cause as found by the state court judge, allowed the search of the laptop computer without resort to any alleged misconduct, the evidence found on the laptop should not be suppressed. Nor should defendant's statements be suppressed as fully described in the court's prior R&R. They were not "fruits of the poisonous tree" because there was no underlying illegality. See Wong Sun v. United States, 371 U.S. 471, 488 (1963).

In any event, Det. Balleydier and the other officers acted in good faith when they reasonably relied on the Search Warrant issued by the neutral and detached state judge. See United States v.

**Leon**, 468 U.S. 897, 923 (1984) (holding that evidence obtained in violation of the Fourth Amendment by officers acting in objectively reasonable reliance on a search warrant issued by a neutral and detached magistrate should not be excluded as a matter of law).

**Accordingly,**

**IT IS HEREBY RECOMMENDED** that defendant's Renewed Motion to Suppress Evidence and Renewed Motion to Suppress Statements be **DENIED**. [Doc. 37]

**IT IS HEREBY ORDERED** that trial in this case is set on **November 5, 2007** at **9:00 A.M.** before the Honorable Rodney W. Sippel.

The parties are advised that they have eleven (11) days in which to file written objections to this report and recommendation pursuant to 28 U.S.C. §636(b)(1), unless an extension of time for good cause is obtained, and that failure to file timely objections may result in a waiver of the right to appeal questions of fact. See Thompson v. Nix, 897 F.2d 356 (8th Cir. 1990).

/s/Mary Ann L. Medler
MARY ANN L. MEDLER
UNITED STATES MAGISTRATE JUDGE

Dated this  7th  day of September, 2007.